# DECISIONS

OF THE

# COURT OF APPEALS

## OF KENTUCKY.

**SPRING TERM....1841.**

Hite and Fishback's heirs *vs* Hite's ex'rs.
and Hite's ex'rs. *vs* Hite and Fishback's    CHANCERY.
heirs.

CROSS ERRORS TO THE LOUISVILLE CHANCERY COURT.    *Case 56.*

*Partnership. Mistake. Trustees. Lapse of time.*

JUDGE EWING delivered the Opinion of the Court.    *April 9.*

ABRAHAM HITE, Sen. and his three sons, then residents    The case stated.
of Virginia, in 1784, entered into articles of co-partner-
ship, for the acquisition of western lands, in which there
was a stipulation, in substance, that if any disagreement
should arise in the division, that it should be settled by
men, chosen by a majority of those in interest. Abraham
Hite, Sen. and Isaac Hite, one of the sons, died, the
latter leaving a son Jacob, and a daughter, who inter-
married with Charles Fishback, and died, leaving several
children. Upon the death of Abraham and Isaac, the
whole labor of superintending and managing a large lan-
ded estate, which they had acquired in Kentucky, paying
taxes, prosecuting and defending law suits, for a series of
years, selling and disposing of parts of the lands, and
collecting the proceeds and applying the same in dis-
charge of a large debt, to which the company had become
subject, devolved on Abraham Hite, Jr. and in 1814 and

Vol. I.                    23

Hite and Fish-
back's heirs
vs
Hite's ex'rs. &c
1830, an award was made by men, chosen by a majority of those in interest, by which an allowance was made to him for his services. But in calculating and carrying out the aggregate amount of his credits against the firm, in the settlement of 1814, a mistake is alleged to have been committed, to his prejudice, in a large amount.

Decree of the
Chancellor.

After the settlement of 1830, he exhibited his bill to correct this mistake, and Jacob Hite and Fishback's heirs answered, resisting the correction and controverting both settlements. The Chancellor confirmed both settlements and corrected the alleged mistake in the first, and decreed accordingly. From this decree Jacob Hite and Fishback's heirs have appealed to this Court.

We concur with the Chancellor, in sustaining the settlement of 1814, as well as that of 1830: or rather, we so far concur as to deem it improper, under all the circumstances of the case, to disturb the *result* in either settlement. But while we thus far concur, we feel, after a full examination of the whole case, that it would be improper to disturb the result, by interposing the extraordinary powers of a Court of Chancery, to correct the alleged mistake of £612 19s 8d, in the first settlement.

Chancellor will
not interfere to
correct an alleg-
ed mistake in a
settlement after
a lapse of more
than 16 years,
on the alleged
ground that it
was recently dis-
covered, where
compl't. had the
means in his
power to know
and might have
known it, during
all that lapse of
time.

1st. The lapse of time presents an argument of no inconsiderable force against the correction. Though it is alleged as an excuse, that the complainants testator was not apprised of the mistake, until some short time before the bill was filed, it is certain that he had the books, accounts, and estimates all in his own possession, and by the exercise of reasonable vigilance and scrutiny, he could have found out all that he now knows in relation to it. After he, with a knowledge of the mistake, or means in his own hands to know it, has acquiesced in the result so long, he should not now be permitted to disturb it. *Vigilantibus non dormientibus servit lex.*

The defendants too, have acquiesced in the result as *it is*, and may not have acquiesced had they known that an account, over six hundred pounds, was to be added to the aggregate of the charge against the firm, produced by the commissioners; and had an attempt been made, within reasonable time, to overhaul the settlement, or add to the aggregate amount, they may, while the arbi-

trators were all living, and the circumstances fresh in the recollection of all, have presented good and sufficient ground to resist it, if not to overturn the whole settlement; acquiescing in it so long, as they are required to abide by it, they should abide by it as *it is*, and not be subjected to an addition to the amount of one third more for services: But,

2d. The reasons most conclusive with this Court, against the correction sought, are the following:

As a general rule, a trustee or surviving partner is not entitled to compensation for personal services, in managing trust funds or in winding up the business of the firm. And though there are exceptions to this rule, in modern adjudications, and the character of the partnership property in this case, and its involved condition, and the labor, perplexity, toil, and skill, necessary for its successful management, together with the consideration, that the partners themselves concurred in that practical and equitable interpretation of the article, which allowed compensation for extraordinary services, by allowing it to the ancestor of the defendants, makes it proper, equitable, and just, that this case should form an exception to the general rule, and that compensation should be allowed to Abraham Hite, Jr. for the extraordinary and perplexing services which devolved on him to perform, and which could not have been performed by the infants, while they were such, nor perhaps so advantageously by them even after they attained to riper years; yet the compensation should not be so liberal as to inspire cupidity or stimulate avarice, or tempt to the procrastination of the business of the firm, with a view to profit, in the compensation to be received, but should be pared down and restricted to an amount *barely sufficient* to remunerate him for the actual services *necessarily* rendered, or as would save him from actual loss.

Tested by this rule, and looking at the compensation allowed in both settlements, we are perfectly satisfied, that it is ample if not liberal, without the addition of the £612 19s 8d, sought to be added by the correction of the mistake complained of. Indeed we are satisfied that by adding the amount of the alleged mistake, and interest, that the allowance would be extravagant and uncon-

It is a general rule, that a trustee, or a surviving partner, is not entitled to compensation for managing trust funds in winding up the business of the firm, and in modern adjudications there are exceptions to this rule.

HITE AND FISH-
BACK'S HEIRS
*vs*
HITE'S EX'RS. &C

sciencious, and we cannot consent to interpose the equitable arm of this Court, in aiding a complainant under such circumstances. Our only difficulty has been, in the examination which we have given to the case, in coming to a satisfactory conclusion, that the allowance which was made, without the addition of the alleged amount sought to be set up and added, is not too liberal to be permitted to stand.

Settlement of
1814.

The amount allowed in the settlement of 1814, greatly exceeds the amount of compensation for daily service, charged by the complainant's ancestor, in his own account, and is greater than he probably expected to receive at the time when he rendered the service; and an increased annual amount is not only allowed in the last settlement, but instead of allowing an aggregate sum for the whole service, as is usual for services rendered for a certain term, an annual amount is allowed, and that amount made to carry interest from the expiration of each year, when it was charged to have fallen due, which could scarcely have been sanctioned as an original claim, for the first time set up in a Court of Chancery. Again, through the whole period of Commonwealth's paper times, the annual salary of $450 in *specie* was allowed, when it is known, as a matter of history, that specie was worth, for some part of the time, double as much as the paper, and for nearly the whole period, much above the paper in value; when it is further known, that owing to the depressed state of things and the scarcity of money, that most of the substantial necessaries of life could be purchased for Commonwealth's paper, on as cheap terms, or nearly so, as the same articles could be purchased for specie in ordinary times, which would make the annual allowance vary, during most of the period, from $600 to $900 a year, in that which was almost the only currency of the state, and which all the officers of the government were required to receive in discharge of their dues and reduced salaries, at par.

A surviving partner should pay interest on any balance in his hands from the time when debts

And again, though the indebtedness of the firm might have presented a good reason against bringing the business to a close, and dividing the surplus, up to the year 1820, yet from that year up to the day of the last settle-

ment, in 1830, that reason no longer could be urged. For it seems, that at the expiration of that year, after extinguishing the debts against the firm, there was a considerable surplus, in cash, on hand, which was greatly increased the next year, and still further increased the next, yet the money is retained, and no division made or proposed, until the annual salary had nearly consumed the whole amount; and yet the interest was allowed the complainant's ancestor, from year to year, when the balance was in his favor, no interest is charged in favor of the firm, upon the balance against him, except for the first year, or year of 1820, though the balance continued against him notwithstanding the annual deduction for his salary, in specie, up to and after the date of the settlement of 1830.

In view of all these apparent objections, this settlement can alone be sustained by a Chancellor, upon the ground, that it has been made by good, true, and respectable men, mutually chosen and agreed upon by a majority, in interest, of those concerned, and within the spirit of the article of co-partnership, and who, in the presence of the adult parties in interest, who submitted to and acquiesced in the result, and having all the facts and circumstances of the complicated transaction before them, which has not been so fully developed to this Court, have fixed upon the salary agreed on as an *average* annual allowance, commensurate with the just compensation which the surviving partner was entitled to for his complicated labors, attention, and skill, for the *whole term*, and have produced the result agreed on, in which the adult parties, being a majority in interest, have acquiesced, and to which they have submitted without objection or complaint. For the sake of peace, (which must have been the moving consideration, for the stipulation in the original article requiring a submission to men selected by the *majority in interest*,) we are disposed not to disturb the settlement, in the absence of proof clearly satisfying our minds that it ought to be overhauled, surcharged, and corrected, at the instance of one only of the parties in interest.

HITE AND FISH-
BACK'S HEIRS
*vs*
HITE'S EX'RS. &C

of the firm are
or might have
been paid off, un-
til distribution
made to those
entitled.

Compensation to
a surviving part-
ner allowed, be-
cause awarded
by referees, cho-
sen agreeably to
the spirit of the
article of part-
nership, and long
acquiesced in.

HITE AND FISH-
BACK'S HEIRS
*vs*
HITE'S EX'RS. &c

But without other proof satisfying our minds that the compensation received, without the addition sought, is not amply commensurate with the services rendered, we cannot afford the aid of this Court, as a Court of equity, in adding to the amount by correcting the alleged mistake sought to be corrected. To do so, would be to act in repugnance to the soundest dictates of good conscience.

Master's report and decree of the Court in conformity thereto, in allowing a salary after the settlement of 1830, disapproved.

We perceive also, that the master, in his second report, which has been sanctioned by the Chancellor, has continued the *annual salary* from the settlement of 1830, up to the death of the original complainant. This cannot be allowed. There is no proof before us, that his laborious services were continued, or were even necessary to be continued, in such manner as to entitle him to so extravagant an allowance; and as nearly the whole estate of the firm had been, before 1830, nearly consumed, we cannot perceive any pretext for continuing his annual salary. Had he lived to the termination of this suit, upon equal reasons might his salary have been continued, in which event the whole remnant of the estate might have been consumed. If his annual salary were to be continued from year to year, he was interested in procrastinating the suit to as remote a period as possible; he would be made the gainer by litigation, though he might be unsuccessful in the suit.

Comp'lt. should be charged with interest on the several sums received from the time received, deducting sums paid out, first from the interest that had accrued and then from the principal, at the several times paid, or at farthest, at the end of each year.

He should, in no event, be allowed more than five per cent. upon the amount collected, after the settlement of 1830.

We also think that he should be charged with interest, upon the sums in his hands, from the several times when they came to his hands, deducting therefrom the sums paid out, first from the interest that had accrued and then from the principal, in the usual form, at the several times at which payments were made, (or at any rate, at the expiration of each year, in the manner the commissioners of 1830, charged the firm with interest.)

There is no ground for the objection that compound interest has been allowed the original complainant, in the settlement of 1830. The annual amount collected by him was more than sufficient to extinguish the interest,

and was properly applied in that way; and being so applied, left only the principal to carry interest from year to year.

Nor is there any ground for the objection, that the Chancellor has allowed interest improperly, on the amount due the original complainant, as guardian, on the excess of his advancements for his ward, R. V. Fishback, over the amount of her funds received by him. Interest has not been allowed, as we understand the record, after the settlement of the guardian with the County Court; nor is even the balance of excess in the *principal* decreed to the complainant, which was properly refused; and as to the settlement of the complainant as guardian and executor, although not strictly proper, especially in allowing an *annual* amount as compensation to the executor, after so great a lapse of time, we think that neither of those settlements should be disturbed.

It is, therefore, the opinion of this Court, that the decree of the Chancellor be reversed, as to Jacob Hite and Fishback's heirs, who are the only plaintiffs in error, and the cause remanded, that an account may be taken and a decree rendered, in accordance with the views suggested, or not repugnant to them; and the appellants are entitled to their costs in this Court.

*Loughborough and Duncan* for plaintiffs: *Owsley and Crittenden* for defendants.